Filed 7/13/22  In re K.C. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re K.C., a Person Coming Under the Juvenile Court Law. | B315767 (Los Angeles County Super. Ct. No. 17CCJP01305) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARIA M.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, D. Brett Bianco, Judge.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

Maria M., mother of now 1-year-old K.C., appeals from the juvenile court's order terminating her parental rights under Welfare and Institutions Code, section 366.26.[1]  K.C.'s father, Carlos C., is not a party to this appeal.

Mother's sole contention on appeal is that the trial court erred when it concluded that the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) did not apply in this case based on what mother argues was an insufficient initial inquiry of extended family under section 224.2.

We conclude that any trial court error resulting from the failure of the Los Angeles County Department of Children and Family Services (DCFS) to inquire of extended family regarding potential ICWA applicability was harmless.  We will affirm the trial court's order.

## BACKGROUND

Because mother's only contention on appeal is that the trial court erred when it concluded that ICWA did not apply based on an insufficient initial inquiry regarding K.C.'s potential Indian ancestry, we include here only facts related to that contention.

K.C. came to the attention of DCFS in January 2021 when he tested positive for amphetamines at birth.  Mother told

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

hospital staff and the DCFS social worker who first interviewed her that she lived with K.C.'s maternal aunt, grandmother, and great-grandmother. Mother and father did not live in the same home, and father did not live with any relative. During her first interview with DCFS, mother "denied having any American Indian heritage."

Mother has five other children, each of whom has been the subject of DCFS and juvenile court intervention. Mother's first, second, and third children now live with the biological father of the second and third children. Father is the biological father of the mother's fourth and fifth children and K.C., who is mother's sixth child. The juvenile court terminated the parents' parental rights as to mother's fourth child in February 2019. The juvenile court terminated parental rights as to mother's fifth child in early 2021. Although none of the other five children is a subject of this appeal, the juvenile court took judicial notice of the juvenile court case files related to the removal of each of the previous five children from mother's custody and the termination of both parents' parental rights as to mother's fourth and fifth children—K.C.'s siblings.

Based on K.C.'s positive toxicology screen at birth, DCFS filed a dependency petition under section 300 on January 20, 2021, and attached an Indian Child Inquiry Attachment. (Judicial Council Forms, form ICWA-010(A).) The social worker who had interviewed mother at the hospital checked boxes on the form next to language indicating that she had asked mother "and on information and belief confirm that [mother] has completed inquiry by asking the child, the child's parents, and other required and available persons about the child's Indian status"

3

and that the inquiry gave the social worker "no reason to believe the child is or may be an Indian child."

In advance of the January 25, 2021 detention hearing, mother and father both electronically filed Parental Notification of Indian Status forms. (Judicial Council Forms, form ICWA-020.) Father checked a box indicating that he had no reason to believe or know that K.C. was an Indian child.[2] (Judicial Council Forms, form ICWA-020 (rev. Mar. 25, 2020).) Mother checked a box on an older version of the form next to the words "I have no Indian ancestry as far as I know." (Judicial Council Forms, form ICWA-020 (rev. Jan. 1, 2008).)

At the detention hearing, the juvenile court concluded, based on the parents' denials of Indian ancestry, that it had no reason to know that K.C. was an Indian child as defined by ICWA. The juvenile court's minute order states that the "[p]arents are to keep the Department, their Attorney[,] and the

---

[2] Judicial Council form ICWA-020 that father submitted included checkboxes next to the following statements: (a) "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe"; (b) "The child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe"; (c) "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe"; (d) "I am a resident of or am domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land"; (e) "The child is a resident of or is domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land"; (f) "The child is or has been a ward of a tribal court"; (g) "Either parent or the child possesses an Indian identification card indicating membership or citizenship in an Indian tribe"; and (h) "None of the above apply." Father checked the box next to "None of the above apply."

4

Court aware of any new information relating to possible ICWA status."

In its jurisdiction and disposition report, DCFS indicated that mother had been born and raised in Los Angeles, though she lived for some time as an adolescent in Mexico with her mother and stepfather. Father migrated to the United States at age 10 from El Salvador with his parents, where father said he was "raised by both his maternal and paternal grandparents."

There is no indication in the record that DCFS ever interviewed any member of either parent's extended family or that any extended family member ever attended any of the juvenile court's hearings in this matter.

The juvenile court terminated the parents' parental rights at a hearing on October 18, 2021, and identified adoption as K.C.'s permanent plan.

Mother filed a timely notice of appeal.

## DISCUSSION

Mother contends the trial court committed prejudicial error when it relied on DCFS's insufficient initial ICWA inquiry to conclude that ICWA does not apply to this juvenile proceeding. DCFS argues that any error was harmless.

Under ICWA, an "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903, subds. (4) & (8); see § 224.1, subd. (a).)

DCFS and the juvenile court "have an affirmative and continuing duty to inquire whether a child" involved in dependency proceedings "is or may be an Indian child." (§ 224.2,

5

subd. (a).)  When DCFS detains a child and places that child in foster care, its duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent."  (25 U.S.C. § 1903, subd. (2).)

"At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and order the parents to complete the Judicial Council's Parental Notification of Indian Status form.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Mother contends DCFS should have inquired of the maternal grandmother, the maternal great-grandmother, a paternal aunt, and potentially two maternal aunts in addition to the inquiry it performed.

We agree with DCFS that any error occasioned by DCFS's insufficient inquiry was harmless.

"[I]n ICWA cases, a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear

6

meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*).)

In *In re Darian R.* (2022) 75 Cal.App.5th 502 (*Darian R.*), we found no prejudice under circumstances similar to this case. There, we observed that "mother at various times lived with the relatives she claims DCFS failed to interview" and "the juvenile court had already found in 2015 that ICWA did not apply to two of the children when all three children have the same parents." (*Id.* at p. 510.)

Here, mother acknowledges that interviewing father's relatives was unlikely to lead to any additional information. In her opening brief, mother states: "Admittedly, father said he was raised in El Salvador until he was ten[ ]years[ ]old, so it was likely there was no Native American Indian ancestry in the paternal family . . . ."

Additionally, as in *Darian R.*, mother lives with all but one of the maternal relatives that she argues DCFS should have interviewed. (See 75 Cal.App.5th at p. 509.) And as in *Darian R.*, mother "was under court order to continue to provide information relevant to ICWA." (*Id.* at p. 510.)

Finally, again as in *Darian R.*, both parents had been parties to earlier dependency proceedings that had resulted in termination of parental rights to two of the child's full biological siblings and removal of three more of the child's half siblings from mother. (See 75 Cal.App.5th at p. 510.) The juvenile court took judicial notice of the files from those matters.

We conclude, as we did in *Darian R.*, that "[t]he record simply does not support mother's unvarnished contention that additional interviews of mother's [relatives] would have

7

meaningfully elucidated the children's Indian ancestry." (75 Cal.App.5th at p. 510.)

Even if we were to conclude that additional interviews might have yielded "information that was likely to bear meaningfully upon whether [K.C.] is an Indian child," the record does not indicate that *any* additional information was "readily obtainable." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.) DCFS social workers tried repeatedly to contact mother and father regarding visitation, parents' enrollment in services, and scheduling statutorily-required meetings to discuss K.C., but both parents' cell phone numbers were disconnected. And although father referenced a paternal aunt in a DCFS interview, he declined to provide DCFS with her name or telephone number.

Any error occasioned by DCFS's failure to conduct the initial inquiry required by section 224.2 was harmless. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.          MORI, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.